With the lawyers who are going to argue, please approach the bench and introduce yourselves. Good morning, Justices. I am Eric Vander Airen, appearing on behalf of the White-Ditloff-Ellis-Ditloff-Dass, Dass, and his wife. Good morning, Justices. My name is Mario Sullivan, appearing on behalf of the Kelly-Craig Yale. You have 15 minutes. You want to reserve some time for rebuttal? Sure. Okay, proceed. Your Honor, Justices, this case is about a flooded condo. My client's bought a condo, which was a garden unit. Remember, we've read the facts, we've read the law, we've read your briefs, so proceed with your arguments. Okay. Well, then I'll get right to the point, which is that the primary issue is the construction of the LLC. The issue in this case is that the member-manager of the LLC, Craig Yale, was active, was personally involved, and broadened my mind. The trial court found that the LLC act insulated him from all liability. But doesn't it? No, it does not. As we explained in the briefs, the language of the statute doesn't go there. I cited those who had the case, the federal case. What about our cases, the first district cases? How do you distinguish those? Julio and what's the other one? Well, first of all, they're factually 180 degrees from my case. They involve acts of the member-manager, which would have been legal in all other forms, except for the fact that they were performed either before or after the LLC existed. There was no allegation of fraud. Does it matter what the tort or if it's breach of contract? That's really not the question. It's whether the allegations lead only that these acts were conducted as a member or, I'm sorry, manager. I would disagree with the court that the language of the statute does not do that. I can't remember the specific reference. The law review article that I cited in the materials makes reference to the fact that this was really aimed at dealing with the overzealousness of litigants and courts to pitch the corporate bail and get to LLC members. The change was meant in LLCs, given the fact that they are informal entities, that people will do things that, by their very nature, open themselves up to a piercing corporate bail. Well, the court said that, I mean, I don't think there's any question that if the pleading allegations are an effort to pierce the corporate bail, then you could have sufficient allegations to proceed. But that's not what was pled here. It's not what was pled. The issue there is that piercing the corporate bail is a derivative liability. It's actually not going as far as direct liability. Piercing the corporate bail is basically saying you, member, manager, are liable if some other corporation or LLC has done something and you have treated the LLC as your personal key. It doesn't deal with direct liability. It's not as much of a stretch. Well, what does this phrase then mean? A member or manager is not personally liable for a debt obligation or liability to the company solely by reason of being or acting as a member. What is your interpretation? First of all, solely as being means that what they're really getting at is his status, not necessarily his acts. So the mere fact that a member or manager is a member or manager is not enough to impose liability. But that's not what we've got in this case. We are alleging that Mr. Dale engaged in fraud. I mean, do you have any state case that would support your theory here? Lots of them out of the state, but none in the state. I mean, would you agree we have to look at the LLC's acts history here? Yes. Okay, and when we look at that, you know, there was some change in the language, was there not? There was. I think 1998, and didn't that change in the language support the position that there is immunity here? Limited. What did B say before? What? What did paragraph B say before, the one that's blanked out? I think it said basically that it was going to treat, well, it actually had two parts. There was one part applicable to the members and one part applicable to managers. The members were equated with shareholders. The managers were equated with officers and directors. Well, when the act was changed, it was changed by removing the language explicitly providing for personal liability. Personal liability but limited. Personal liability derivative or something that another member or manager had done, or joint and several liability with the corporation or acts beyond the agent's authority. No more. Yeah, but what you're telling us, you don't have one case to support anything you're saying. Your Honor, this is a case for first impression. Nobody's dealt with this act, engaging fraud, in the state of Illinois. But the statute itself says a member, it excludes any kind of act, whether it's in contract, tort, or otherwise. Correct, but that's reading a very limited portion of the statute. The rest of the statute says that, as you read before, Justice McBride, that this is solely for the member or manager in his capacity. So we're not dealing with a situation where we are penning fraud on or we are exempting members and managers for their own personal fraud. That's an extravagant and extraordinary stretch. Well, then how would you get past the statute of limitations when Mr. Yale's name was on the documents? They were tendered originally. There's no question that he was a member or manager of the Walcott. Excuse me. Walcott. In that instance, it's all about timing. We sued in the tail end of 2008. At that point, I knew that there were corporations involved. What did you name Yale, though? I didn't name Yale until 2011. Right, so. What happened in between? No, I'm just saying, if he was on documents and. He wasn't. Well, isn't it true that in the state that the LLC has to be registered? You won't find Mr. Yale's name there, or at least you wouldn't at the time. You found it in the Department of Buildings when you went for the permit. Mr. Yale attached to his motion to dismiss in the trial court a copy of the, or it's in the record, a copy of the Secretary of State's website showing the corporation. It shows Alan Liss as the president. I'm talking about the Department of Buildings when you went over there to look at the permit. Yale's name was on there. It wasn't on the. No, it wasn't. Mr. Yale submitted names of other people. He submitted the names of Alan Liss, who is the head of LBC Inc. I mean, an important aspect of this case is this Mr. Yale covered for himself. Mr. Yale positioned Alan Liss as the responsible party. He did so in correspondence with the Department of Buildings. He did so in the permitting process. He did it with the Illinois Secretary of State enlisting the business. It was one of the reasons that I vigorously pursued Mr. Yale, because I thought Mr. Yale was the responsible party. I didn't find out about Craig Yale until 2009 in the course of discovery, and I asked who signed the property agreement. At first I got, we're not going to tell you. And then I finally, in the course of 201K discussion, said, OK, Craig Yale signed it. I knew nothing more about Craig Yale other than he signed the document. That document is effective August 2005. It's about the time construction started on the building, but more than two years before the construction on my client's unit was done, which means that Mr. Yale signed it in 2005, but the fraud occurred afterwards. The fraud was the fact that they didn't do the things they said they were going to do in the property report. Well, that all happened afterwards, and I hadn't a clue as to what Mr. Yale was doing in the interim. I only found that out in 2011 when I deposed Bruce Teitelbaum, who is the other member of the Baltimore LLC, and I deposed Alan List, who's the head of the LDC. Alan List sent all those signatures on documents saying I'm the head. I didn't sign them. But what you want us to do is to say that Puleo and Carollo were wrongfully decided. No, I don't want to. You want us to distinguish and carve out an exception for fraud. Puleo and Carollo, and I'm taking a moment to answer your question. I apologize for that in advance. Carollo and Puleo, the cases that you just said, are limited to their facts. I mean, the simple fact is the courts in those cases weren't asked to deal with cases of fraud, and they were fine in their rendition of opinions when it came to an agent acting outside his authority before or after the LLC existed. So I'm saying what you want us to do is to carve out an exception for fraud is what you want to do. I mean, isn't that the job of the legislature? I think the LLC legislature has already spoken, and I don't think the legislature intended to undo common law fraud. I mean, there's no expressed language in that statute that says we are undoing common law rights that have existed for a century or more. Well, what about the language that says the debts, obligations, and liabilities of a limited liability company, whether arising from contract tort or otherwise, are solely the debts, obligations, and liabilities. So why wouldn't a common law fraud action apply? Why wouldn't it? Two reasons. I mean, I keep coming back to the fact that when you read Section 10-10 altogether, it makes clear that what you're dealing with is you don't, if those things are involved, you're not going to impose liability if somebody has acted outside of their authority. If those things are involved, you are not going to attach liability to members and managers because of their status. It's just simply, it's silent on the question of, yeah, but what if they defraud people? There's also the issue, and we haven't talked about it, as to the incorporation into the statute of the reference to the Uniform LLC Act. Now, it was interesting in preparing for this argument that I looked at all the provisions of the Illinois LLC Act and found that the legislature did not cite the Uniform Act in all cases. It's not that the Uniform Act, the companion Uniform Act provisions weren't there. They were. The legislature chose not to cite them. It included the reference in the legislative history only in limited instances. 10-10 was one of them. I think that indicates the legislature's intent. It wanted for people to look to the Uniform Act for construction of 10-10. And the Uniform Act and its comments make clear that this is not, you do not reach a case where the individual member or manager has engaged in fraud. You just don't do it. And neither the trial court, nor Galeo, nor Carollo, nor any other Illinois case, federal or state, that has considered them, has looked at them. In fact, they patently ignored them. They basically, I mean, I don't quite know why, because the history is just as much legislative history, the history and statutory notes are just as much legislative history as the actions of the legislature. But that history indicates the legislature's intent. So to come back to Justice Gordon's question on what the intent of the legislature was, and carving out an exception, I'd argue that, no, you're not carving out an exception. You're just following the legislature's intent. The legislature never intended for this to go all the way and exempt people from fraud. I want to go back to something earlier. Now, you said that Mr. Yale's name is not on file with the Secretary of State. It is now. It is now? All right. Because your opponent says that the Articles of Incorporation, or Organization rather, for Walcott, were filed with the Illinois Secretary of State on July 7, 2004, and they attached an exhibit. Pursuant to the Walcott Articles of Organization, Yale has at all times been listed and identified as a sole member thereof. The information set forth in the Articles of Organization is a matter of public record and have at all times, relevant here too, been listed and easily accessible. So then they say they have a true and correct accurate printout from the Secretary of State. So are you going to stand by your statement that this is totally incorrect? Yes, I am. If you go and you look at that document, the Articles of Origination, you won't find Mr. Yale's name. What about on the website of the Secretary of State? Are you saying that the Yale name does not appear? It didn't at the time. It was the head of LDC, whose name appears in many, many, many other instances as the head of Walport Court. So it's there now, but it wasn't there in 2004? 2005, 2007, 2008, no, it wasn't there. It's been changed so that the record accurately reflects that Mr. Yale is really the member and manager, but as I say, I didn't know Mr. Yale existed. I didn't know, I had no knowledge of him until 2009. There wasn't anything in the record that steered me that way, and the defendants were stonewalling on me on discovery. I found out, oh, he signed the property agreement. Well, that's important, but the property agreement's effective in 2005. I don't know whether Mr. Yale, I don't know whether he's still around. I don't know what his relationship is. They filed their motion. I looked at the Articles of Incorporation or the Articles of Origination. It's not Mr. Yale. Mr. Yale's nowhere to appear. So I'm chasing a wild goose. I'm chasing the head of LDC, because I think he's the guy who's organizing this problem. So who was listed then as the? Alan Liss. Alan Liss was on all the Secretary of State documents. He was on the Secretary of State documents. He's on the Articles of Organization that Mr. Yale has cited and attached to his brief. Okay, and the Articles, though, they were signed by a Charles Mack, weren't they? He's an attorney. Okay, all right. Oh, I see. And actually, that exhibit is really, it's dated February 13, 2012, so. Okay. I mean, I don't know. All right, but your position is that his name was never on the website? I think it is now. Yes. But that's only a recent event. And, you know, really, I guess, I mean, my point to the trial court, my point to the court. Well, everybody here is an officer of the court. So when we ask your opponent if Mr. Yale's name was there in 2004, that's swearing to us. So I'm just reminding everyone when they answer a question here, they're answering as an officer of the court. And I want to know if Mr. Yale was there in 2004 or not. And I want, you know, an honest answer. And I just advise everyone that when you step up and argue a case, you're speaking as an officer of the court and you're basically under oath. So I understand your position. You've placed it into the brief, and I'm not challenging it or questioning it. I just really want to know whether this man's name was there or it wasn't. Because if it wasn't, then I have some obvious concerns. The final point I wanted to make in that regard was the fact that my standard with regards to the timeliness of my CFA is whether there's a disputed record. I mean, you're not fact-finding. You're not determining the facts as to whether I could or should have known or it's a disputed record. And therefore, time starts running when I say it, and I think it does. In 2009, when I learned about Mr. Yale, or even later, because Mr. Yale was busy covering his tracks. All right. You want to save some time for your rebuttal? I would. Thank you very much. May it please the Court and Counsel, the issues in this matter are simple. It was addressed by the trial court and properly found by the trial court that the LLC Act protects my client, Mr. Yale, from the act's liabilities, obligations, whether being tort or contract, as the justices have recited, of the Walcott LLC. Let me ask you about this Walcott LLC. Who was the organizer of this limited liability corporation? It was Mr. Yale as well as Mr. Alan Liss. They started this development. They proceeded in this development. Why did Mr. Liss say that all his signatures were forged? I'm not exactly sure, Your Honor. That's what he has said, hasn't he? That's what has been alleged that he said during his deposition, whether there was a fallout between Mr. Liss and Mr. Yale, the reasoning behind Mr. Liss's statements for unsure of. The issue that has always been in this case is whether or not the LLC Act protects the members and managers of the LLC, which listed itself on the property report, the property report that was received by the plaintiffs at the time of their closing and even prior to the closing in an affidavit signed by Mr. Yale. He signed, as a member manager of the LLC, that the information contained in the property report are true and accurate. When did he sign that? That was signed prior to, it's required by the City of Chicago and any rehab development of a condo association, and it was signed back prior to the closing. Was that like December 28, 2006? 2006. At that time, at the closing, there was an affidavit that he had to sign. Correct. Required by the City of Chicago, by law, that he signs attesting to the information set forth in that property report. There were false statements in that property report. That's what's alleged by the plaintiffs. Did they do the sewer or not? I'm sorry, what was that? Did they put in a new sewer or not, the sewer pipes? My client's position at all times, they followed what was set forth in the property report, that the inspection was done. The property report doesn't say that a new sewer line was put in. It says that it was inspected and found to be in correct and proper order, and that's what was set forth in the property report. As far as new replacements, that's alleged by plaintiff with regards to a specification sheet or an information sheet that was given to them when they were looking at purchasing the property that said there would be new plumbing installed, not necessarily. At the closing, Mr. Sullivan, in this affidavit, you're saying this affidavit was filed at the time of the closing? Correct. It would have been filed prior to that. Is this the document that closing counsel says is illegible, or is this something where the name of Craig Yale is typed in and his signature appears above it? It is typed in on the page where it's notarized by a notary saying that the individual signing the affidavit is Craig Yale, who is a member of LSE. It's typed and written. And now his signature is scribbled on there, but the notary, it is typed in. And let me ask you about the documents that have to be filed with the Secretary of State. Is it your position that in 2004, Mr. Yale was listed as the manager, organizer, or whatever, of Walcott Court, LLC? It's my client's position and our position that he was a member of the LLC and was part of the incorporation. As far as when that may have changed to listing him solely member, I'm not fully sure of that fact. Okay, but when it was initially created or incorporated, who were these significant principals? Well, it was Mr. Yale as well as Alan Liss. So your answer is that you don't know if he was on the documents that had to be on file with the Secretary of State. At the time of the closing in 2006, I'm not for sure. But subsequently after looking at the Secretary of State's website, it was changed to definitely show Mr. Yale as the sole member of the LLC. So it was changed? At what point it was changed, I'm not sure. And I'm clear as to whether or not that was changed. But the other fact that is important to remember also is that the plaintiff was put on notice when they received the property report that Mr. Yale was a member manager of the LLC. So in 2006 when they bought the property, Mr. Yale was a member manager of the LLC. Whether he was a sole member or not, I'm not sure of that fact. But there's an affidavit. Where in the record is that notarized affidavit that you're referring to that the plaintiffs were tendered on December 28, 2006? It's attached to the property report, which was attached to the original complaint, as well as to our motions. Yeah, I know. But where in the record is it? I'm not sure, Justice, this is the exact page. But the full property report was submitted. Is the full property report part of the record or not? It is, Your Honor. All right. The full property report is submitted. I'm not exactly sure to what – And with that report is this affidavit? Correct. All right. Mr. Your Honor, it's our position that the plaintiffs were put on notice at the time of their closing as to Yale's involvement in the development of the LLC. And the court was correct in finding that the protection of the LLC allows and protects Yale from those particular individual acts. It's clear from several different cases, all here in the First District, and has all been found, that the legislators intended when they removed subsection B from the LLC Act that they were protecting the members of an LLC more so than what's in a corporation. In fact, even the language that was previously being, and I'll quote, stated that a member or manager of an LLC shall be personally liable for any act, obligation, or liability of the LLC to the extent the director of an Illinois business corporation is liable in analogous. That was removed. They removed any personal liability. Now, whether or not if Mr. Yale was doing something in an individual capacity, we may be talking something different. But all the facts in this case show that any action that is alleged by the plaintiffs were involved with Mr. Yale had to deal with acting as a member or manager of the LLC. Well, when you say that, is the complaint couched in terms of Mr. Yale as manager? Well, there are many parts where it's listed as Mr. Yale's manager. In fact, they cite in their own complaint the fact that Mr. Yale signed the property report as member or manager of the LLC, attesting to the fact that the information in here is true and accurate and so forth. That this is all what's alleged in there. If you go through the first four complaints and then look at the fifth complaint, many of the same actions that they allege that the LLC did was now replaced with Mr. Yale did, that Mr. Yale obtained these permits. So that Mr. Yale did this. Well, would those kinds of things be questions of fact based on the complaint in this case? Whether he was solely, you know, whether the allegations are truly Mr. Yale acting solely by reason of him being a member? I think they're questions of fact, but they're facts the way the plaintiff alleged them and the way the plaintiff alleged them. Right, but I'm saying they're questions of fact. Is the court allowed to dismiss? In certain situations, they are. When taken into account what is alleged in the complaint, it is what the plaintiffs have put forth. It's not what we've put forth. It's what the plaintiffs have put forth and those acts in and of themselves, even looking in the light most favorable to the plaintiffs, were actions that a member would do. They've never done or alleged anything in there that showed an individualistic aspect of it. Mr. Yale never went to the plaintiffs and said, well, I think this place is great. All the piping and sewing has been placed. I guarantee it personally. That was never done. He never had any interaction with the plaintiffs in the case, nor was it ever alleged. The facts that, as they are alleged in all five complaints, are all actions of an LLC. Well, who did they have interactions with before they, you know, entered into the actual closing of the property? Well, they would have interacted with the broker for the property, the listing broker who would have dealt with them. Yeah, but what about Walcott? They would have, well, they would have dealt with the developer. There were developers in this case, weren't there? The owner of LDC is who they would have interacted with. Who was that? It was the developer. Was it List? It was. I'm not sure who the owner of LDC was, but it was LDC Incorporation, who's the main party defendant in this case, and who had already received a default judgment against them. Yes, I'm aware of that. But that's who they would have dealt with. They didn't have any individual interaction with Mr. Yale. All right. And, Your Honor, there's some allegations as to piercing the corporate bail, but that doesn't apply to this case because they never allege that in their complaint. They never make a specific pleading for that, nor do any of the facts, again, in the most light favorable light towards the plaintiff show any reason to pierce the corporate bail. It's also still a question whether or not you can even use that doctrine against the LLCs, which has been addressed in several cases as well by the First District and Second District, and they've done it in limited circumstances. But that doesn't even apply to this case here. What about the Uniform Act comments? With regard to the Uniform Act comments, the legislature's removed B. They made cite to the comments in there, but they changed it. It doesn't necessarily mean that because the comments are referenced in there, that they're going to exactly what the uniform language is, because they changed it. They changed what it was to say. And they actually provided for other provisions that would allow for individual liability. If you look at subsection D, it refers to ways that a member or managers of an LLC can take on personal liability for the debts and obligations of the corporation where the LLC doesn't have them. I understand. I'm not sure why anybody would do that. But the legislature's allowed for it, and they provided it in there, and that's where they say in limited circumstances that an individual can be held liable. Yes. Now, they also did the limitations in C with regards to piercing the corporate bail where they removed some of the allegations or elements in there, as far as ought to ego and so forth, allowing that you can't impose liability. Let's see here. To observe the usual formalities, requirements, or exercise of the powers of management and business is not grounds for imposing personal liabilities. Everything there is limiting the liability of a member in an LLC. They did this to make more protections. They did this to remove this, regardless of the comments with regards to the uniform code. Now, although the LLC Act, and it is our position, as well as we believe the court properly ruled that the facts are clear, that Yale cannot be held liable under the LLC Act, even if we ignore that fact, they are still outside the limitations of the statute of limitations for the Consumer Fraud Act. They have known since 2007 that they were injured. And since 2006, they've had a property report that listed and attested to by Mr. Yale as the manager of the LLC the fact that the information in the plumbing industry relies. This is the exact same document that throughout the entire complaint that they have alleged is their fraud, that they were lied to, that this is not true, they were told this, this is not the case. So at least since 2007, they've had notice, at a minimum notice, that Mr. Yale had some sort of involvement in here since he's the one that's attesting to the fact that the information in the property report is correct. And that because they've had that notice, they're outside the statute of limitations. They didn't do anything further to investigate. Why did you say 2007? 2007 is when the first allegation as to the inspection, that the plaintiff's claim shows that the sewer line was not functioning properly or was not replaced as they believe was done. So that's why I go back as far as 2007, because that's really when their injury has more come to know and to like for them, since the first two floodings were in 2007. And as the court properly found, at a minimum they had notice. They had notice that their injury happened in 2007, which is undisputed by any of the parties. And at a minimum, they had notice of the fact that Yale's involvement in this, especially pertaining to the property report. And for those reasons, we asked this court to uphold the ruling of the trial court. The trial court was incorrect in upholding the long-standing case law, the law of the land, and the fact that the LSC protects members more than a corporation does. And the fact that the plaintiffs had, at a minimum, under the discovery rule, had to investigate and were given notice as to their injury and as to Mr. Yale's involvement in the development of their property back in 2007. Thank you. Roberto. The first one goes to the purported affidavit that is part of the property report. The property report that was given to my clients, at least this is on the representations to me of my clients, is found at C-0-1-12-9-3 through C-0-1-4-8-5. It appears in other places because it was produced in discovery, but that's what was given to my clients. If you go through that document, you won't find Alan Bliss's signature anywhere. At least I haven't been able to find it. Well, they say it's at R-C-1400 and 1402. And counsel indicated that there's a notary signature that specifically the notary swears to that the signature appearing is that of a Craig Yale. I'm looking at 1400 and 1402. Mr. Yale's signature is not on those documents. And there's no notary signature either? No. They're blank. I mean, Mr. Yale's name is there, but no signature, no notary. Okay. Well, so where's his name? You said it's there? His name is there? His name is there. It's actually where it is. Well, I'll look at the record. So his name is on R-C-1400 and it's part of the property report? Correct. Okay. But you're saying they didn't see that or they didn't get that? Well, the actual property report is the first 15 pages. Then you get a whole host of other exhibits to it. As I say, it starts at 1293. Okay. All right. You can make your point. We can refer to it later.  But I mean, I'd emphasize again, this is a 2005 document. Mr. Yale is the manager. He's attesting to facts as they existed in 2005. My point is the fraud occurred in 2006, 2007. It was when they were constructing my people's unit, and we had no idea whether Mr. Yale was still on the scene or not. He signed something in 2005. But aside from that, Mr. Yale's a mystery. I will concede to the court that we haven't alleged Mr. Yale acting in anything other than his – he was wearing his LLC hat at the time of all these acts. Still, the fact that you're wearing an LLC hat does not mean you've got to defraud people. It's not a license to defraud people. No, but there's a legislative prerogative here that is limiting liability of those members, managers, while they're wearing that hat for liabilities that occur as a result of contract, tort, or otherwise. Well, I mean, the one provision within 1010 says that. It also says – it goes on to say solely that in their capacity. Then you have the uniform act, the comments of which were adopted into it, which makes clear that if this is something for which you would be liable if you weren't wearing your LLC hat – Well, were those comments written when – or were they written with the act having that provision B that's no longer in our act? The current – the amendment – and this should be – I want to clarify this point. The amendment, that which we're arguing about now, is exactly the same. It is the uniform act. They are identical, which means that – I mean, if the legislature was looking at the uniform act, then the uniform act and its comments guided the legislature's draft of this document. I guess my final point is – really goes to the difference between LLCs and corporations. I mean, LLCs are informal business arrangements. They are largely for small businesses who don't want to have the hassle and expense and obligation of following all the corporate formalities. However, I don't – I have a hard time seeing this as a difficult call, and one of the reasons is that there's a huge policy issue at stake, which means if you're going to say, hey, you're wearing an LLC hat, go to broad, because you can't be held personally liable. That is on the other side of the universe from corporations and officers. Officers and directors of corporations do not get a pass. They are individually responsible for broad importance. They don't. What you are doing is you're creating an animal, and I can guarantee you that unless people absolutely positively have to, there won't be any more corporations if you can simply file for an LLC. But what about piercing the corporate veil – or piercing the veil, rather? Piercing the LLC veil. That's allowed. Yeah. One, it's hard. And two, you're not going as far as independent liability. I mean, the simple fact is derivative liability is not the same thing as you are responsible personally for your actions. And that's really what I want you to, as Justice Gordon indicated earlier, I want you to carve out an exception, find a legislative intent that LLC members and managers don't get a pass for broad. If you defraud people, you're going to be held responsible. Along with the LLC, you've got joint several liability, but you personally are going to be held responsible. But what you're trying to do is take the job of the legislature and throw it to the courts. I wish the legislature could be clearer in everything it does. And I wish they would have been clearer in this instance, because they certainly made a lot of headache for a lot of people. Given the history, given the Uniform Act and its incorporation in the comments, given the way courts across the country, except for Toledo, have evaluated this, and they have, in many instances, evaluated looking at exactly the same statutory language. That's the Jade opinion down in South Carolina. It's the same act. They have come to the opposite conclusion, which is the legislature, we don't know, we're not quite sure what they were doing, but we know they didn't clearly come to the issue of fraud, so that's what I'm asking. I understand. Thank you for your time. Okay. We'll take this case under advisement. The court is adjourned.